******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ECKER, J., with whom ROBINSON, C. J., joins, concurring in part and concurring in the judgment. When a juror sleeps for at least one hour during the presentation of evidence in a murder trial, the trial court must do more than simply monitor the sleeping juror and discuss the matter with counsel. As we observed in *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995), there are "significant public interests" at stake during a criminal trial, which include not just "the liberty of the accused, but also [protecting] the entire citizenry from overzealous or overreaching state authority." (Internal quotation marks omitted.) Id., 526–27. Given the important public interest in fair and just criminal trials, I agree with Justice McDonald that "it is the duty of the *court*, and not of the *defendant*, to ensure that a preliminary inquiry is conducted," that the trial court's inquiry in the present case was inadequate, and that, "under *Brown*, a more serious inquiry was required." (Emphasis in original.)

That said, I disagree with Justice McDonald that the trial court's failure to conduct such an inquiry was structural error that deprived the defendant, Trevor Monroe Outlaw, of his constitutional right to a fair trial. See, e.g., *United States* v. *McKeighan*, 685 F.3d 956, 974–75 (10th Cir.) (sleeping juror did not deprive defendant of fair trial), cert. denied, 568 U.S. 1019, 133 S. Ct. 632, 184 L. Ed. 2d 411 (2012); *United States* v. *Fernãndez-Hernãndez*, 652 F.3d 56, 74–75 (1st Cir.) (same), cert. denied sub nom. *Gonzalez-Mendez* v. *United States*, 565 U.S. 924, 132 S. Ct. 353, 181 L. Ed. 2d 223 (2011); *United States* v. *Freitag*, 230 F.3d 1019, 1023–24 (7th Cir. 2000) (same). In light of the defendant's legitimate concerns regarding the racial composition of the jury and decision not to ask the trial court to inquire further, the duration of time that the juror was observed sleeping in relation to the overall length of the trial, and the nature of the evidence adduced during that short period

of time,[1] I conclude that the absence of a more serious inquiry in this case did not render the defendant's trial fundamentally unfair or the proceedings manifestly unjust. I therefore agree with the majority that "the defendant is unable to establish the existence of a constitutional violation, as required under the third prong of" *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Part I of the majority opinion. Accordingly, I concur in part I of the majority opinion.[2]

---

[1] It is unclear from the record, but it appears that the sleeping juror may have missed all or part of the testimony of three witnesses: (1) a paramedic who responded to the shooting, (2) a detective who collected physical evidence from the crime scene, and (3) a detective who collected a buccal swab from the defendant.

[2] I agree with and join parts II, III and IV of the majority opinion.